IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Daniel Lee Mellinger,               )<br>                                                 )<br>              Petitioner,            )<br>                                                 )<br>vs.                                          )<br>                                                 )<br>                                                 )<br>Warden Graber,                      )<br>                                                 )<br>              Respondent.         )<br>                                                 ) | No. CV 13-02191-DGC (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On October 28, 2013, Daniel Lee Mellinger, an inmate currently incarcerated at the Federal Correctional Institution ("FCI"), Phoenix, Arizona, filed a *pro se* Petition for Writ of Habeas Corpus (hereinafter "habeas petition") pursuant to 28 U.S.C. §2241, challenging the Bureau of Prisons' refusal to place him in a halfway house to complete his sentence based upon a United States Parole Commission (USPC) detainer lodged against Petitioner for a parole violation (Doc. 1). On January 21, Respondent filed his Answer urging the Court to deny Petitioner's habeas petition for the reason that Petitioner did not exhaust his administrative remedies, and alternatively, for the reason that Petitioner's habeas petition lacks merit. (Doc. 10.) On February 5, 2014, Petitioner filed a Reply in opposition to Respondent's Answer. (Doc. 11.)

Respondent, in his Answer, noted that Petitioner's projected release date from the Bureau of Prisons (BOP) is July 19, 2014. (Doc. 10, at 2.) For this reason, this Court issued

1 an order on July 2, 2014, directing Respondent to file a memorandum of law addressing the
2 issue of whether or not Petitioner's habeas petition would become moot upon Petitioner's
3 release from custody. (Doc. 14.) On July 9, 2014, Respondent filed a Memorandum of Law
4 in Response to the Court's Order, arguing that Petitioner's habeas petition will be rendered
5 moot by his release from custody on July 19, 2014. (Doc. 16.)

## BACKGROUND

Petitioner is currently serving sentences for Armed Bank Robbery and Possession of a Prohibited Object by an Inmate. (Doc. 10-1, at 3.) Petitioner is scheduled to be released from custody on July 19, 2014, having served his federal sentence. (Doc. 16-1, at 4.) Because that date falls on a Saturday, Petitioner will be released on the preceding weekday, Friday, July 18, 2014. (Id.) It is undisputed that Petitioner is subject to a USPC detainer. Petitioner was placed on parole pursuant to Petitioner's conviction and sentence on multiple bank and savings-and-loan robberies and larceny in 1985 in the United States District Court for the Central District of California. (Doc. 10-1, at 3.)

In April, 1997, Petitioner was released from federal custody on that sentence into state custody on a state detainer, but was to remain under the jurisdiction of the USPC until 2003. (Doc. 10-1, at 3.) Petitioner was released from his state sentence and began his parole supervision on August 22, 1997. (Id.) The USPC issued a warrant in January, 1998, charging Petitioner with multiple parole violations. (Id.) In March, 1998, Petitioner's parole was revoked and he was ordered to serve 12-months imprisonment. (Id.) Upon his release, Petitioner was re-paroled, with his parole term set to expire in 2004. (Id.) The USPC issued another warrant on July 13, 1999, charging Petitioner with new parole violations. (Id.)

On June 16, 1999, Petitioner was arrested on new charges, and subsequently convicted of armed bank robbery in the United States District Court for the Northern District of California, and sentenced to 188 months in prison. (Id., at 4.) While serving that sentence, Petitioner was convicted of possessing a prohibited object in prison in the United States District Court for the Eastern District of Texas, and was given an additional 15-month sentence in 2004. (Id.) On May 15, 2007, the Parole Commission supplemented its 1999

1 warrant with an additional charge that Petitioner violated his parole by committing the armed
2 bank robbery in 1999. (Id.)

3 When a parolee is alleged to have violated the terms of his release, the USPC may
4 "[i]ssue a warrant for the apprehension and return of the offender to custody." 28 C.F.R.
5 §2.44(a)(2). If that parolee "is serving a new sentence in a federal, state or local institution,
6 a parole violation warrant may be placed against him as a detainer." 28 C.F.R. §2.47(a).
7 Petitioner was notified by the USPC in 2007, while he was serving his current federal
8 sentence, that it had issued a parole violator warrant and placed it against him as a detainer.
9 (Id.) The USPC detainer was reviewed on at least 2 occasions by the parole commission
10 during hearings conducted at FCI Phoenix, and Petitioner was afforded the opportunity on
11 both occasions to address the reviewing panel. (Doc. 10-2, at 3; Doc. 16-1, at 4 ).

12 Pursuant to a Memorandum of Understanding (MOU) executed by the Bureau of
13 Prisons (BOP) and the United States Marshals Service (USMS) in 2007, the BOP holds
14 inmates who are "parole violators," defined as an inmate who is being held on a violator
15 warrant, pending a parole revocation hearing. (Doc. 16-1, at 2-3.) The MOU discusses
16 which agency will house and/or pay the expenses of a parole violator, depending on where
17 the inmate is located. (Id.) When the inmate is located at a BOP facility, BOP will retain
18 custody of the inmate under the MOU. (Id.)

19 Under the MOU, it is the practice at FCI Phoenix, where Petitioner is currently
20 housed, that a parole violator who has completed his BOP sentence will be released from the
21 federal sentence, and then be immediately re-arrested by BOP under the MOU. (Doc. 16-1,
22 at 3.) The BOP then forwards copies of the executed warrant to the USPC, and houses the
23 inmate on the parole violator warrant pending a parole revocation hearing. (Id.) According
24 to the practice at FCI Phoenix, the inmate is moved from the housing units where sentenced
25 inmates are incarcerated into a temporary, holdover housing unit, to await the inmate's parole
26 revocation hearing. (Id.) When the inmate is released from BOP and re-arrested on the
27 parole violator warrant, the inmate is no longer a sentenced BOP inmate, but is a USMS
28 detainee temporarily housed in the BOP pursuant to the MOU. (Id., at 4.) On July 18, 2014,

- 3 -

Petitioner will be released from the custody of the BOP and simultaneously be arrested on the USPC detainer and will remain in custody to await his parole revocation hearing. (Id., at 4.) The revocation hearing must occur within 90 days of the "date of the execution of the violator warrant upon which the parolee was retaken." 28 C.F.R. §2.49(f). The parole commission regularly conducts proceedings at BOP institutions where the violators are held. (Doc. 16-1, at 3.)

Petitioner has actively been challenging the detainer before the USPC, and in federal court. In 2006, Petitioner filed an action in the U.S. District Court for the District of South Carolina arguing that the detainer was invalid because the USPC delayed in executing its warrant against Petitioner as a detainer. See Mellinger v. Bauknecht and United States Parole Comm'n., 2007 WL 4276415 (S.C.Dist., November 29, 2007). The court denied the claim finding that a parole violator warrant that is issued before the inmate's sentence expiration date preserves the USPC's jurisdiction to revoke the parole after the original sentence expiration date. Id. The Fourth Circuit affirmed. Mellinger v. Mr. Bauknecht, U.S. Parole Comm'n., 279 Fed. Appx. 238 (4th Cir. 2008) (*per curiam*). In 2011, while incarcerated in California, Petitioner challenged the same detainer claiming that, if the USPC were to find him in violation of parole, it would not be authorized to impose any additional sentence, because by doing so it would be applying the 1987 Sentencing Act, which was enacted after his sentence, and therefore a violation of the Ex Post Facto Clause. Mellinger v. Gutierrez and U.S. Parole Comm'n., CV 11-08527-DMG-AN (C.D.CA, September 27, 2012) (Doc. 22, at 3-4). The court found Petitioner's claim speculative, and the Ninth Circuit Court of Appeals affirmed. Mellinger v. Gutierrez and U.S. Parole Comm'n, 2013 WL 3963888 (9th Cir. Aug. 2, 2013).

## ARGUMENT

The Government argues that Petitioner's habeas petition will become moot on July 18, 2014, as Petitioner will no longer be in BOP custody, and because the USPC, not the BOP will control the length and location of his detention. Petitioner's sole claim in his habeas petition was the BOP's failure to deem him eligible for placement in a halfway house

1 prior to the completion of his sentence. By way of background, the BOP policy regarding
2 release to halfway houses, 28 C.F.R. §570.20, *et seq.*, provides that an inmate's eligibility
3 for placement in a halfway house is "determined on an individual basis." 28 C.F.R. §570.22.
4 Certain factors may inhibit halfway house placement. Inmates with a detainer that will
5 likely lead to arrest, conviction, or confinement, "shall not ordinarily participate" in halfway
6 house programming. See, e.g. BOP's Program Statement 7310.04, at p. 10, which
7 implements 28 C.F.R. §570.20, *et seq*. Staff at FCI Phoenix conducted an individualized
8 review of Petitioner's case and determined that he was not eligible for halfway house
9 placement, in part, because he would be arrested on a detainer after expiration of his federal
10 sentence, and also based upon his history of escape and committing new offenses just a short
11 time after being released into the community. (Doc. 10-2, at 3.)

12 Petitioner's claim is mooted by his release from the BOP on his current federal
13 sentence on July 18, 2014, when Petitioner will become subject to the jurisdiction of the
14 USPC. Because Petitioner will have completed his BOP sentence, it stands to reason that the
15 failure of the BOP to designate him to halfway house placement prior to the completion of
16 his term is no longer a live controversy. For that reason, Petitioner's habeas petition should
17 be denied and dismissed with prejudice.

18 In his Reply, Petitioner acknowledges the previous habeas petition he filed in federal
19 court in California against the USPC, but notes that he did not name the USPC as a
20 respondent in the instant case because "this issue deals with the BOP's interpretation of what
21 a detainer is." (Doc. 11, at 3.) After this Court ordered the Government to brief this issue
22 of mootness, Petitioner filed two additional pleadings on July 15, 2014, entitled Laws of
23 1985 in Effect: Motion for Immediate Release From Unlawful Incarceration, (Doc. 17), and
24 Supplement to Brief (Doc. 18.) Although he acknowledges therein that the USPS is now his
25 sole custodian, he claims that the detainer is unconstitutional because the "amended statutes
26 extending the life of the USPC can not apply to [him] because they came after [Petitioner]
27 committed his crimes." (Doc. 17, at 4.) Petitioner also argues, that once he is released on
28 his current federal sentence, that he can not be held by the USPC because the agency does

- 5 -

1    "not exist." (Id.)  These arguments ignore the fact that (1) Petitioner did not raise the issue
2    of the invalidity of the detainer in general, or the lack of the authority of the USPC in his
3    habeas petition, (2) any issue relating to the length of sentence imposed by the USPC for a
4    parole violation is not ripe[1], (3) Petitioner has not named the USPC as a party giving it an
5    opportunity to respond, and (4) there is no longer a detainer in place with the BOP as
6    Petitioner was arrested on the parole warrant.

7          Furthermore, Petitioner has filed two previous habeas petitions, and in both challenged
8    issues relating to the USPC detainer.  He filed the instant petition just three months after the
9    Ninth Circuit's decision affirming the California district court.  The nature or impact of
10   Petitioner's detainer has not changed at all since his first petition.  Petitioner could have
11   challenged the authority of the USPC to proceed against him in his previous habeas petitions,
12   but chose not to.   The abuse of the writ doctrine "forbids the consideration of claims that
13   were or could have been raised in a prior habeas petition."  Calderon v. United States Dist.
14   Ct., 163 F.3d 530, 538 (9th Cir. 1998) (*en banc*), overruled in part on other grounds in
15   Woodford v. Garceau, 538 U.S. 202 (2003). Petitioner knew or had reason to know of the
16   grounds for relief from the detainer is his previous petitions, and therefore his habeas
17   petition, to the extent the Court concludes that he properly raises challenges to the USPC
18   warrant or detainer, should be dismissed as an abuse of the writ.

19   \\\
20   \\\
21   \\\
22   \\\
23   \\\
24   \\\
25   \\\

---

[1] See, Hopper v. U.S. Parole Comm'n, 702 F.2d 842, 845 (9th Cir. 1983) (contention that USPC must credit offender with time in state pretrial custody premature, as the USPC had not yet held a parole revocation hearing).

**CONCLUSION**

This Court finds that Petitioner's habeas petition is mooted by his release from the BOP to the USPC detainer, and that alternatively the petition should be denied as an abuse of the writ.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion to Expedite, USPC Notice to Execute Warrant, filed on June 4, 2014 (Doc. 12) be denied as moot.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

DATED this 22nd day of July, 2014.

_____
Michelle H. Burns
United States Magistrate Judge